No. 46,650

GEORGE W. GREENWOOD and THE TOPEKA SAVINGS ASSOCIATION, *Appellant,* v. JACK ESTES, State of Kansas Savings & Loan Commissioner, *Appellee,* and STATE SAVINGS & LOAN ASSOCIATION, *Intervenor.*

(504 P. 2d 206)

Opinion filed December 9, 1972.

*John R. Hamilton,* of Crane, Martin, Claussen and Hamilton, of Topeka, argued the cause, and *Ward D. Martin,* of the same firm, was with him on the brief for the appellants.

Appellee did not appear and submitted no brief.

*James D. Waugh,* of Cosgrove, Webb and Oman, of Topeka, argued the cause and *Terry L. Bullock,* of the same firm, was with him on the brief for the intervenor.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in mandamus seeking to compel the State Savings and Loan Commissioner (defendant-appellee) to forfeit the corporate existence of the State Savings and Loan

Association (intervenor) for its failure to make home loans during the calendar years 1967, 1968 and 1969.

The issue presented involves the construction of K. S. A. 17-5228, which reads:

"Any association, which shall not commence business within six months after date upon which its corporate existence shall have begun, *or after having commenced business shall fail for a period of three years to make home loans,* shall forfeit its corporate existence, unless the commissioner, before the expiration of such six months' period, shall have approved the extension of time, not to exceed an additional six months' period, within which it may commence business, upon a written application stating the reasons for such delay. No such extension shall be granted after the expiration of such additional six months' period. Upon such forfeiture the certificate of incorporation shall expire and all action taken in connection with the incorporation thereof, except the payment of the incorporation fee, shall become *void.* Amounts paid on accounts, less expenditures authorized by law, shall be returned pro rata to the respective investors." (Emphasis added.)

State Savings and Loan Association (hereafter referred to as "State Savings") was chartered under the Kansas Savings and Loan Code (K. S. A. 17-5101 *et seq.*) in 1923. It commenced business, received deposits, made home loans, kept its charter alive and complied with every law of the State of Kansas up to May 2, 1966. State Savings did not, however, make any home loans during the calendar years 1967, 1968 and 1969, this being the only charge made against it in the petition. It was contended in the trial court that this failure on the part of State Savings to make home loans during the three year period in question resulted in (*a*) the forfeiture of State Savings' corporate existence, (*b*) the expiration of State Savings' certificate of incorporation, (*c*) the voiding, *ab initio,* of all actions taken in connection with the incorporation of State Savings, except for the payment of the incorporation fee, and (*d*) the legal necessity of returning, pro rata, all amounts previously paid by State Savings' depositors into their accounts, less expenditures authorized by law.

The trial court did not agree with the plaintiffs' interpretation of the statute in question and entered judgment in favor of the intervenor. The plaintiffs' have duly perfected an appeal.

On appeal George W. Greenwood and Topeka Savings and Loan Association (appellants) and Jack Estes, State Savings and Loan Commissioner of the State of Kansas, take the position that the corporate charter of State Savings was automatically forfeited under 17-5228, *supra,* because it failed to make a home loan within

the three years just mentioned. Counsel for those parties argues that the statute is mandatory, and if at any time *during the life of the corporation* it fails to make a home loan for a period of three years, the charter is automatically forfeited.

Counsel for State Savings contends 17-5228, *supra,* is an organizational statute only and requires only that a savings and loan association having commenced business must complete its organization by commencing to make home loans *within a period of three years after the date it commences business.*

In our opinion the trial court correctly construed 17-5228, *supra,* denying the relief sought by the appellants.

A hasty reading of 17-5228, *supra,* would suggest two possible constructions. One construction is that the period of three years commences immediately "after having commenced business," the other construction is that the three year period may be *at any time during the corporate life of the savings and loan association,* after it has commenced business. We do not think the latter is the proper construction of the statute for the following reasons.

It is to be noted that the statute in question provides for a rather drastic forfeiture. It is an established rule that forfeitures are not favored in the law and that statutory provisions for the forfeiture of corporate charters must be strictly construed. (*City of Topeka v. Water Co.,* 58 Kan. 349, 49 Pac. 79; 19 C. J. S., Corporations, § 1651, and see also *Storm v. Barbara Oil Co.,* 177 Kan. 589, 282 P. 2d 417.)

Before applying the rule of strict construction to 17-5228, *supra,* it is to be observed that a savings and loan association, as its name clearly implies, has a two-fold business purpose. It is a place for the public to deposit their "savings" to earn interest, and it is a place where the public can obtain "loans" when they need additional capital. In order to organize a savings and loan association, therefore, it is logical that the new association must enter into both the savings business and the loan business.

A careful reading of 17-5228, *supra,* together with such additional considerations as its title and placement within the State Savings and Loan Code, clearly demonstrates that this statute is designed solely to cover organizational problems. It requires simply that a new savings and loan association, rather promptly after incorporation, enter both the savings business and the loan business. It requires that a new association enter the savings business within

six months after its incorporation, and that it enter the loan business within three years after it has entered the savings business. The specific wording of the statute alone compels this conclusion, in fact, the precise phrase relating to the making of home loans within the first three years of the association's business life reads as follows: ". . . or after having commenced business shall fail for a period of three years to make home loans, . . ." This phrase is separated from the rest of the statute by commas, thus indicating its completeness as one independent concept or thought.

The appellants argue this phrase means that every savings and loan association, irrespective of the length of time it has been in business, and without regard to the volume of business which it may have done in the past, or which may still be existing on its books, must make home loans in intervals no greater than three years; and if any such association should fail to do so, its complete existence is automatically forfeited, all of its prior acts are voided (not merely voidable) and after subtracting lawful expenses, any remaining funds in the hands of the association must be divided pro rata and returned to its investor-depositors.

K. S. A. 17-5228 was enacted by the Kansas Legislature as section 29 of chapter 133 of the Laws of Kansas 1943. The act was designed to be a general and all inclusive enactment to govern all of the business dealings of every savings and loan association from its formation through its disolution. The legislature subdivided the code into eight separate articles as follows: 1. Definitions; 2. Incorporation and Organization; 3. Management; 4. Capital; 5. Powers; 6. Supervision; 7. Fees; and 8. Miscellaneous. It is significant that section 29 (now 17-5228, *supra,*) is included in article 2, the section dealing solely with Incorporation and Organization. Once a savings and loan association has engaged in business, it is subject to the supervision of the savings and loan commissioner under article 6. Under this article the commissioner is empowered to order and direct the discontinuance of some violation or unsafe practice, where such activity is brought to his attention. He is also authorized to appoint a conservator to take charge of the association and manage its business until the board of directors is permitted to resume management, or until the association is reorganized, or until a receiver has been appointed to liquidate its affairs.

The heading to 17-5228, *supra,* was supplied by the legislature— "Forfeiture of charter for nonuse". This heading implies that there

has been no use put to the charter, and not that it has been put to use and the association's business practices have subsequently become unsafe or that it has conducted its affairs in an illegal manner. The clear implication of the heading is that 17-5228, *supra*, governs forfeitures in those cases where there has been no use put to the charter, and the code leaves to other sections (within article 6) the problem of governing those situations where the affairs of associations must be wound up and its business life terminated because of unsafe or illegal practices.

The general rule in the construction of a statute is that the intention or purpose of the legislature is to be determined not from any single section, or from isolated or particular portions, but from a general consideration or view of the act as a whole. Accordingly, in order to determine the legislative intent, all of the material parts of the same act and all of its provisions or sections must be construed together and in harmony with each other. (*Wenger v. Taylor*, 39 Kan. 754, 18 Pac. 911; and *Thoman v. Farmers & Bankers Life Ins. Co.*, 155 Kan. 806, 130 P. 2d 551.) Thus, in determining the meaning of 17-5228, *supra*, careful consideration must be given to the savings and loan code in its entirety.

When a new savings and loan association begins business, it first acquires a charter, it next acquires money from persons who want to invest in the association by opening a savings account; after acquiring funds, the association then begins loaning money in the form of home loans. When an association first commences business, by acquiring money from its depositors, but prior to the time that any home loans are made, the assets of the association consist solely of money and the liabilities of the association consist solely of organizational and operational expenses and accounts payable arising out of its depositors' savings accounts. Once the association has fully entered into the savings and loan business by beginning to make home loans, however, assets of the association would consist primarily of accounts receivable evidenced by promissory notes, secured by mortgages arising out of loans made, while its liabilities continue to consist of operational expenses and accounts payable evidenced by the saving accounts held by its various investor-depositors.

The savings and loan code is quite specific as to the procedures to be followed and the disposition to be made of the assets and liabilities of savings and loan associations during the subsequent

life of the corporation, where a state savings and loan association is converted into a federal savings and loan association (K. S. A. 17-5531 *et seq.*), or where such associations merge (K. S. A. 17-5541 *et seq.*), or where an association is reorganized (K. S. A. 17-5548 *et seq.*), or where an association undergoes dissolution (K. S. A. 17-5553 *et seq.*), or in instances where an association has been taken over temporarily by a conservator or a receiver for the purposes of straightening out its affairs, or reorganizing, or liquidating. (K. S. A. 1971 Supp. 17-5614 *et seq.*).

It does not seem logical that the legislature intended a state savings and loan association operating as a going concern should automatically forfeit its charter without making some specific provision for the servicing of its mortgage loans. The statute here in question simply provides that amounts paid on accounts, less expenditures authorized by law, shall be returned pro rata to the respective investors. The statute obviously does not contemplate what should be done in the event of a forfeiture after the corporation has been a going concern for an extended period of time.

If the legislature had intended to provide for an automatic forfeiture of a corporate charter of a savings and loan association upon its failure at any time for a period of three consecutive years to make home loans, it could and would have specifically done so.

The statute here in question provides that upon a forfeiture as dictated, the certificate of incorporation shall expire and all action taken in connection with the incorporation of the association, except for the payment of incorporation fees, *shall become void.*

If the appellants' construction of 17-5228, *supra,* were adopted: (1) What is to become of outstanding promissory notes in favor of the association? Are they void and uncollectable and the borrowers discharged thereunder? (2) If 17-5228, *supra,* were to be applied to cases such as these, what is to become of the mortgages running in favor of the forfeited association? Clearly this statute would make them void *ab initio,* having been made to a corporation which in legal effect never existed. (3) What is to become of the real estate owned by such an association and used as its offices and a place of business? Not being money, it cannot be returned to the investors under 17-5228, *supra,* which makes no provision for a conservator or other person authorized to sell the property. The deed to the property would stand in the name of a corporation which never existed under the law.

It seems clear to us the forfeiture provisions of 17-5228, *supra,* were intended by the legislature to apply only during the incorporation and organizational phase, rather than at some later time during the period of corporate existance after the corporation engaged in full scale business operations.

The State Savings and Loan Commissioner testified it was entirely possible a savings and loan association might not be able to make a home loan because its funds were all committed. It must also be recognized that in time of great financial stress it might be imprudent business practice for a savings and loan association to make home loans during some three year period. Such a situation may well have existed during the depression of the 1930's. In such a situation it does not seem logical the legislature intended that a savings and loan association would automatically forfeit its charter.

For the above reasons we have concluded the failure of State Savings to make home loans during the calendar years 1967, 1968 and 1969, did not result in an automatic forfeiture of its corporate charter under the provisions of K. S. A. 17-5228.

The appellants contend the court erred in refusing to admit an attorney general's opinion into evidence and in ignoring its probative value. Actually the trial court admitted one former Kansas Attorney General's opinion in evidence, but not Exhibit 14, which was another opinion, together with related letters. These opinions were not evidence. They are occasionally cited in briefs in the same manner as judicial authorities.

While an opinion of an attorney general may be persuasive, it is neither conclusive nor binding, and the recipient of it is free to follow it or not as he chooses. The opinions of the attorney general have in no sense the effect of judicial utterances (7 Am. Jur. 2d, Attorney General, § 8.)

In *Leddy v. Cornell,* 52 Colo. 189, 120 Pac. 153, the Colorado court held the construction placed upon a statute by the opinion of an attorney general was neither conclusive nor binding upon the courts, and in circumstances where such an opinion was without authoritative legal support, it should not be approved or followed. This is the rule followed in Kansas.

The judgment of the lower court is affirmed.

PRAGER, J., not participating.