(778 P.2d 377)

No. 63,128

KANSAS ASSOCIATION OF PUBLIC EMPLOYEES, *Petitioner-Appellee*, v. THE PUBLIC EMPLOYEE RELATIONS BOARD, *Respondent*, and HOWARD SCHWARTZ, *Intervenor-Appellant*.

Opinion filed August 18, 1989.

*Carl A. Gallagher*, assistant attorney general, and *Robert T. Stephan*, attorney general, for intervenor-appellant.

*Brad E. Avery*, general counsel, Kansas Association of Public Employees, of Topeka, for appellee.

ELLIOTT, J.: Intervenor Howard Schwartz, the Kansas Judicial Administrator, appeals from a trial court order ruling judicial branch employees are covered by the Public Employer-Employee Relations Act (PEERA), K.S.A. 75-4321 *et seq.* In doing so, the trial court reversed an order of the Public Employees Relations Board (PERB) which, in effect, held judicial branch employees beyond the pale of coverage of PEERA.

Finding no legislative intent to include judicial branch employees within the coverage of PEERA, we reverse and reinstate the order of PERB.

What was to become PEERA started in the 1969 legislature in the form of a "public employer relations" bill sponsored by the League of Kansas Municipalities. That bill failed. Eventually, PEERA was enacted in 1971, to become effective in March 1972. K.S.A. 75-4321 *et seq.* See generally Goetz, *The Kansas Public Employer-Employee Relations Law*, 28 Kan. L. Rev. 243, 243-46 (1980).

PEERA was roughly based on a model act drafted by the Advisory Commission on Intergovernmental Relations. See ACIR Model "Meet and Confer" Act, *reprinted in* Gov't Empl. Rel. Rep. (BNA) 51:211 (1973); Goetz, 28 Kan. L. Rev. at 245 n. 16.

PEERA purports to cover all public employees of a public employer (the State and its agencies) *except*, as here pertinent, certain professional and confidential employees. K.S.A. 75-4322.

At the time PEERA was progressing through the legislature, the pool of judicial branch employees potentially subject to its coverage was considerably less than at present. The potential pool included the research attorneys of the Supreme Court justices and commissioners; the confidential secretaries of the justices and commissioners; a few employees in the office of the reporter of decisions; and a few employees in the Supreme Court clerk's office, the Judicial Administrator's office, and law library. The reporter of decisions and the Supreme Court clerk are constitutional officers and are therefore not employees. See Kan. Const. art. 3, § 4.

District court employees at that time were county employees. And counties/cities had the option of choosing to come under the coverage of PEERA. See Goetz, 28 Kan. L. Rev. at 247. The Court of Appeals and its staff had not yet been created.

In determining questions of law, we are admonished to use common sense in evaluating the meaning and adequacy of written documents. See *State v. Wade*, 244 Kan. 136, 139, 766 P.2d 811 (1989); *State v. Micheaux*, 242 Kan. 192, 199, 747 P.2d 784 (1987).

Because they are lawyers, research attorneys are, according to PEERA, professional employees. K.S.A. 75-4322(d)(3). Research attorneys also prepare hearing memoranda and confer with their justices regarding issues presented on a given appeal. Usually, they are aware of the court's rulings before the opinions are released to the public and to the parties litigant. Common sense mandates that research attorneys are also confidential employees.

The justices'/commissioners' secretaries are also confidential employees by any common-sense definition. They type draft opinions and thus know the court's rulings long before those opinions are released to the public and the parties litigant.

Employees in the reporter of decisions' office, among other things, proofread opinions, validate factual and legal statements in the opinions, and validate the legitimacy of legal authorities cited in the opinions. Thus, they are aware of the court's decisions long before those opinions are released to the public and

the parties litigant. In fact, the reporter's employees have seen this opinion long before its release to the public. The reporter's employees, most of whom are lawyers, are, by common sense, confidential employees and/or professional employees.

The Supreme Court clerk's employees are also confidential employees by any test of common sense. Opinions are delivered to the clerk's office a day or two before being mailed to the parties litigant and before being released to the public. Those employees, therefore, have access to the court's opinions—including this one—before they are filed of public record.

Yet we are asked to attribute to the legislature a specific intent to *include* within the coverage of PEERA *all of the above-described judicial branch employees*. KAPE argues that the only "confidential employees" specifically defined by PEERA are, essentially, those who have access to personnel files or who possess peculiar knowledge of the meet and confer process. It also urges the view that the only "professional employees" specifically excluded from coverage are professional employees of a school district. K.S.A. 75-4322(a), (c).

We are not capable of attributing such an intent to the legislative act currently before us. Granted, the Supreme Court has stated PEERA "extends to all persons employed by the State of Kansas and its agencies," with certain exceptions. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 803, 667 P.2d 306 (1983). The Holmesian saw, that the language of the law is no broader than the narrowest construction of its facts, is apposite. *Pittsburg State* simply did not involve a question of coverage of judicial branch employees.

On the other hand, *Pittsburg State* does contain some teachings which are of broad, general application: usually, the interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. The agency's interpretation of a challenged statute may, in fact, be entitled to *controlling significance* in judicial proceedings. This deference is sometimes called the doctrine of operative construction. *Pittsburg State*, 233 Kan. at 809. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *Pittsburg State*, 233 Kan. at 810.

In the instant case, PERB, by declining jurisdiction, in effect

interpreted PEERA to exclude coverage of judicial branch employees. Given the history of the judicial branch pool of employees potentially subject to PEERA detailed above, we conclude there is a rational basis for PERB's "operative construction" of the act. The PERB order declining jurisdiction was entered on January 20, 1988—long before the legislative session adjourned.

Additionally, the attorney general, in 1987, issued his opinion that judicial branch employees are not covered by PEERA. Att'y Gen. Op. No. 87-181. Attorney general opinions, of course, are not binding on the courts. *E.g., Greenwood v. Estes, Savings & Loan Commissioner,* 210 Kan. 655, 661, 504 P.2d 206 (1972).

Instructive, however, is the fact the legislature has failed to react to the attorney general opinion and to the PERB "operative construction" that judicial branch employees are simply not covered by PEERA. If the legislature disagrees with those interpretations of PEERA, it has had ample opportunity to respond with clarifying legislation. It has not done so.

The argument that this legislative inaction was an oversight because the PERB order is not "published" is of no legal significance. A similar argument was rejected in *Pittsburg State.* See the dissenting and concurring opinion of Chief Justice Schroeder: "It cannot be assumed the legislature has been made aware of the interpretation given to the Act by PERB." 233 Kan. at 832. See also Justice McFarland's concurring and dissenting opinion: "There is nothing in the record to indicate whether or not the balancing test has been previously utilized by PERB, let alone whether the legislature was cognizant of such usage." 233 Kan. at 844-45.

Against these arguments, our Supreme Court found legislative inaction to be of controlling significance:

"*PERB has been an active state agency* since its creation by the legislature in 1971. *Doubtless it has faced prior challenges as to what is or is not negotiable* between public employers and public employee representatives, and [doubtless] has resolved such challenges by using the 'significantly related' test. *If the legislature* in 1977 *had desired to curtail* the use of such a test, *or to have made clearer* the restrictions on negotiability urged by appellants, *it could have done so." Pittsburg State,* 233 Kan. at 818. (Emphasis added.)

In light of the legislative inaction here present, and given the fact that, at the time PEERA was being enacted, virtually all judicial branch employees were patently confidential and/or

professional employees, we are simply unable to attribute to the legislature an intent to include those judicial employees within the coverage of PEERA.

Finding no legislative intent to include judicial employees within the coverage of PEERA, we need not address the separation of powers argument urged alternatively by intervenor, and express no opinion on that argument.

The judgment is reversed; the PERB order is reinstated.

REES, J., dissenting: Two questions are presented on this appeal: whether the Public Employer-Employee Relations Act (PEERA) applies to the judicial branch and its employees and, if so, whether application of PEERA to the judicial branch violates the constitutional doctrine of separation of powers. The district court decision, finding PEERA applicable and no violation of separation of powers, should be affirmed.

Substantial case law leads to resolution of the first of the two questions raised in the district court and now on appeal.

"When a statute is plain and unambiguous the court must give effect to the intention of the legislature *as expressed*, rather than determine what the law should or should not be." (Emphasis added.) *Szoboszlay v. Glessner*, 233 Kan. 475, 478, 664 P.2d 1327 (1983).

"In construing [a] statute, the fundamental rule to which all others are subordinate is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. If such intent can be determined from the language itself, the court is not warranted in looking beyond the terms of the statute. [*Schmidt v. U.S.D. No. 497*, 231 Kan. 267, 270, 644 P.2d 396 (1982)], and cases cited therein." *Arneson v. Board of Education, U.S.D. No. 236*, 8 Kan. App. 2d 178, 180, 652 P.2d 1157 (1982), *rev. denied* 232 Kan. 875 (1983).

"A primary rule for the construction of a statute is to find the legislative intent *from its language*, and where the language used is plain and unambiguous and also appropriate to an obvious purpose the court should follow the intent as expressed *by the words used*. [Citation omitted.]" (Emphasis added.) *Underwood v. Allmon*, 215 Kan. 201, 204, 523 P.2d 384 (1974).

*In re Estate of Duel*, 161 Kan. 593, 595, 171 P.2d 271 (1946), had taught earlier that we are not warranted in looking beyond the words used in enacted legislation in order to reach some construction or interpretation which would change its plain meaning.

Statutory words are presumed to have been and should be treated as consciously chosen and, with understanding of their ordinary and common meaning, intentionally used with the

legislature having meant what it said. *In re Armed Forces Cooperative Insuring Ass'n,* 5 Kan. App. 2d 787, 792-93, 625 P.2d 11 (1981).

Additionally, it has been held that: "No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the [statutory] language used, the defect is one which the legislature *alone* can correct." (Emphasis added.) *Russell v. Cogswell,* 151 Kan. 793, 795, 101 P.2d 361 (1940).

Meaningful consideration of the question whether PEERA is applicable to judicial branch employees requires examination of the legislatively chosen specific language of certain PEERA provisions. The majority opinion is deficient in its consideration of essential plain and specific language of PEERA.

PEERA first affirmatively enunciates its purpose:

"(a) The legislature hereby finds and declares that:

. . . .

"(b) . . . it is the purpose of this act to obligate public agencies, public employees and their representatives to enter into discussions with affirmative willingness to resolve grievances and disputes relating to conditions of employment, acting within the framework of law." K.S.A. 75-4321.

The principals referred to in the statement of purpose are then identified:

" 'Public agency' or 'public employer' means . . . the state of Kansas and its state agencies." K.S.A. 75-4322(f).

" '[S]tate agency' means any state office or officer . . . [or] department . . . or any agency, division or unit within any office, department . . . or other state authority or any person requesting a state appropriation." K.S.A. 75-3701.

This language is particularly significant when compared with the language of K.S.A. 1988 Supp. 77-602(k) appearing in the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* There, it is provided that " '[s]tate agency' . . . does *not* include . . . the judicial . . . branch of state government." (Emphasis added.)

Further, PEERA provides that:

" 'Public employee' means any person employed by any public agency, except those persons classed as [1] supervisory employees, [2] professional employees of school districts . . . , [3] elected and management officials, and [4] confidential employees." K.S.A. 75-4322(a).

For the purpose of PEERA, "supervisory employee," "profes-

sional employee," "elected and management official," and "confidential employee" are terms defined by K.S.A. 75-4322(b), (d), (e), and (c), respectively.

Inasmuch as the term appears in the statutory statement of purpose, PEERA recites that:

" 'Conditions of employment' means salaries, wages, hours of work, vacation allowances, sick and injury leave, number of holidays, retirement benefits, insurance benefits, prepaid legal service benefits, wearing apparel, premium pay for overtime, shift differential pay, jury duty and grievance procedures, but nothing in this act shall authorize the adjustment or change of such matters which have been fixed by statute or by the constitution of this state." K.S.A. 75-4322(t).

PEERA also provides for the creation of the Public Employee Relations Board (PERB), prescribes procedures for achieving PEERA's stated purpose and, by K.S.A. 75-4327, imposes upon both the public employer and the certified employee organization, acting through their representatives, the duty to meet and confer in good faith. To "meet and confer in good faith" is defined by PEERA to mean "the process whereby the representative of a public agency and representatives of recognized employee organizations have the mutual obligation personally to meet and confer in order to exchange freely information, opinions and proposals to endeavor to reach agreement on conditions of employment." K.S.A. 75-4322(m).

In brief, PEERA simply requires that, through their representatives, the state and its agencies and employee organizations meet and confer in good faith to endeavor to reach agreement on conditions of employment. Related to this responsibility and activity, PEERA reserves to and imposes upon the parties various rights and obligations.

The plain truth and not reasonably disputable fact is that, insofar as here concerned, PEERA's provisions, particularly its definitions, are clearly and unambiguously stated. There is no more than one interpretation that can fairly be made.

The PEERA definition of "'public agency or public employer' " explicitly recites that the term means "the state of Kansas and its state agencies" with the included term "state agency" having the meaning ascribed to it in K.S.A. 75-3701. K.S.A. 75-4322(f), (x). No contention is asserted by either the Intervenor or the majority that the judicial branch is not a "PEERA public agency." It is.

With respect to whether judicial branch employees are "public

employees," it is directly stated in K.S.A. 75-4322(a) that, with the exception of employees falling within any of four denominated classes, *any* person employed by *any* public agency is a public employee. Accordingly, judicial branch employees are "PEERA public employees" *unless* they fall within an excepted class.

Patently, no judicial branch employee falls within any of the four excepted classes solely by reason of his or her employment by the judicial branch. Not all judicial branch employees are supervisory employees (K.S.A. 75-4322[b]). Although some judicial branch employees are professional employees, *e.g.*, lawyers (K.S.A. 75-4322[d]), no judicial branch professional employee is an employee of a school district. Not all judicial branch employees are elected and management officials (K.S.A. 75-4322[e]). Not all judicial branch employees are confidential employees *as defined by K.S.A. 75-4322(c)*, that is, "PEERA confidential employees." (The majority opinion is materially flawed when it ascribes a meaning to "confidential employee" at variance from that set forth in K.S.A. 75-4322[c].) Not every judicial branch employee is a supervisory employee, an elected and management official, or a confidential employee. But, judicial branch employees who are not supervisory employees as defined by K.S.A. 75-4322(b), elected and management officials as defined by K.S.A. 75-4322(e), or confidential employees as defined by K.S.A. 75-4322(c), *are* covered by PEERA. They are "PEERA employees." PEERA cannot fairly be interpreted otherwise.

Thus, by statutory language, the judicial branch is within PEERA's operation as a public employer, and those judicial branch employees who are not supervisory employees, elected and management officials, or confidential employees, as each of those three terms is statutorily defined, *are* within the operation of PEERA.

The Intervenor argues that PEERA, at least when applied to the judicial branch, somehow is ambiguous. Not so—at least regarding to whom PEERA applies.

To the extent that the Intervenor's argument suggests ambiguity in the language of PEERA, it is flat wrong. No purportedly ambiguous PEERA language is identified, discernible, or even suggested. The language of PEERA, as enacted by the legislature, cannot fairly be interpreted to exclude "PEERA employ-

ees" of the judicial branch. Inclusion is the *only* interpretation. The language used by the legislature is entirely free from ambiguity. It is when there are two or more interpretations of a statute which can fairly be made that statutory ambiguity exists. *Sterling Drilling Co. v. Kansas Dept. of Revenue,* 9 Kan. App. 2d 108, 109-10, 673 P.2d 456 (1983), *rev. denied* 234 Kan. 1078 (1984). It is when there is ambiguity that statutory construction is required. 9 Kan. App. 2d at 109. There being no ambiguity, statutory construction is not called for here.

The majority opinion discounts the Supreme Court's twice-spoken statement in *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 803, 818, 667 P.2d 306 (1983), that PEERA extends to *all* persons employed by the State of Kansas and its agencies, except supervisory employees, professional employees of school districts, elected and management officials, and confidential employees. Nonetheless, that is what the Supreme Court said in *Pittsburg State* and it must be taken that, when our Supreme Court speaks, it means what it says. The majority declares that the Holmesian saw that the language of the law is no broader than the narrowest construction of its facts, is apposite. It then observes that *Pittsburg State* did not involve the question of PEERA coverage of judicial branch employees and asserts that *Pittsburg State* must be read and understood accordingly. Interestingly, in support of the proposition that, in determining questions of law, we are admonished to use common sense in evaluating the meaning or adequacy of *written documents* we are referred only to *State v. Wade,* 244 Kan. 136, 139, 766 P.2d 811 (1989), and *State v. Micheaux,* 242 Kan. 192, 199, 747 P.2d 784 (1987). *Wade* and *Micheaux* each concerns the sufficiency of a criminal information and neither concerns examination of *statutory* provisions, as does the case before us. If the saw is apposite in regard to *Pittsburg State,* it also is apposite in regard to *Wade* and *Micheaux;* they must be read and understood accordingly. Moreover, it is significant that in *Micheaux* it is said that "the fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained *from the statute.*" 242 Kan. at 199. The legislative purpose of PEERA is, rather atypically, explicitly recited. That appears at K.S.A. 75-4321. The now material legislative intent is found in the

legislature's chosen wording of the above-quoted PEERA provisions.

The Intervenor argues that ambiguity is reflected by the fact that KAPE contends PEERA is applicable to the judicial branch, he and his lawyers contend that PEERA is not applicable to the judicial branch, and PERB (on ground or grounds not expressed by it of record) has found lack of jurisdiction to proceed on KAPE's petition. That difference of position does not constitute statutory ambiguity. In *Recht-Goldin-Siegal Const. v. Dept. of Revenue*, 64 Wis. 2d 303, 306, 219 N.W.2d 379 (1974), it is stated:

" ' "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." [Citation omitted.]'. . . [W]hen a case comes before this court it is obvious that people disagree as to the meaning to be given to [the] statute. *This is not controlling.* The court must determine whether 'well-informed persons' could have become confused." (Emphasis added.)

It is for the courts to decide whether ambiguity in a statute is present.

In *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, Syl. ¶¶ 4, 5, 518 P.2d 453 (1974), this appears:

"The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature.

"While the administrative interpretation of a statute should be given consideration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests with the court."

See *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d at 108-09.

The Intervenor has presented lengthy recitation of "legislative history" substantially concerning proposed but unenacted amendments to PEERA. That submitted "story" of inaction is insolubly ambiguous and of no persuasiveness in the resolution of this appeal. See *Williams v. Board of Education*, 198 Kan. 115, 124, 422 P.2d 874 (1967); *State v. Lancashire Insurance Company*, 66 Ark. 466, 471-72, 51 S.W. 633 (1899).

In resolving the question of PEERA's applicability to the judicial branch and "PEERA employees" of the judicial branch, the majority erroneously has abdicated its role to PERB. *Pittsburg State* indicates that utilization of the so-called doctrine of operative construction is permissive. (" '[T]he operative interpretation given . . . by the . . . boards . . . is helpful, and

*may* be entitled to controlling significance.' " " 'This court has long *given . . . . weight . . . .' "* (Emphasis added.) 233 Kan. at 809. But, more importantly, it appears that prerequisite to usage of the doctrine, the question involved must be one of resolution of statutory ambiguity or interpretation of the agency's rules or regulations. See 233 Kan. at 809. As now material, there is no statutory ambiguity in PEERA. Utilization of the doctrine is mistaken.

Turning to constitutional considerations, Art. 3, § 1 of the Kansas Constitution provides that "[t]he supreme court shall have general administrative authority over all courts in this state." However, that provision speaks of *general* administrative authority over the *courts* in this state. If there are functional problems arising from overlapping imposition of responsibility with respect to administrative action to be taken, resolution of those problems lies in "corrective" legislation or, possibly, judicial action in some context other than that involved in the case before us. Additionally, when Art. 3, § 1 of the Kansas Constitution speaks of "administrative authority over [the] courts," it is speaking of administrative oversight of the judicial functions of the courts. No interested party in this case suggests that PEERA covers the judicial branch's judicial personnel. Instead, this case includes the question of PEERA's applicability to nonjudicial personnel of the judicial branch. Moreover, any question regarding PEERA coverage for judicial personnel vis-a-vis nonjudicial personnel should not be ripe for review until there has been a unit determination under PEERA.

The Intervenor's argument of applicability of PEERA by reason of its enactment prior to court unification and its nonexclusion of the judicial branch must fail under the analogous reasoning of *Ballweg v. Farmers Ins. Co.*, 228 Kan. 506, 511, 618 P.2d 1171 (1980): "Even if the legislature does not contemplate the occurrence which confronts a court in construing a statute, that court may not supply omissions in a statute. This is true regardless of whether the omission resulted from inadvertence or because the case in question was never contemplated."

The determination of whether a statute is ambiguous is a question of law to be resolved by the courts. *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 122, 734 P.2d 1125 (1987). On the question of PEERA coverage presented in this

case to the district court and to us, PEERA is not ambiguous. The legislative language is plain. We must find that the legislature said what it meant to say and that PEERA means what it says. We cannot substitute our judgment for that of the legislature. *In re Substitute for House Bill No. 2492*, 245 Kan. 118, 775 P.2d 663 (1989). PEERA covers the judicial branch and nonexcluded employees of the judicial branch.

On the second major question submitted for our review, that is, whether application of PEERA to the judicial branch and its "PEERA employees" violates the separation of powers doctrine, the compelled answer is "no."

The purpose of the doctrine of separation of powers among the legislative, executive, and judicial branches of state government is to "avoid and prohibit a dangerous concentration of power in one branch of government to the detriment of the others." *Behrmann v. Public Employees Relations Board*, 225 Kan. 435, 442, 591 P.2d 173 (1979). It has long been recognized, however, that powers among these branches overlap. "Recent cases have taken a pragmatic, flexible and practical approach to the doctrine, giving recognition to the fact there may be a certain degree of blending or admixture of the three powers of government and that absolute separation of powers is impossible. [Citations omitted.]" *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984).

" '. . . A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. [Citation omitted.]' " *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. at 59.

"When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. [Citations omitted.]" *State, ex rel., v. Bennett*, 219 Kan. 285, 290, 547 P.2d 786 (1976).

The essential nature of the power challenged here is not judicial. Judicial power is the power to interpret and apply the law in actual controversies. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. at 59; *Van Sickle v. Shanahan*, 212 Kan. 426, 440, 511 P.2d 223 (1973). Personnel deci-

sions, such as hiring and firing of court employees, are administrative rather than judicial in nature. *Forrester v. White,* 484 U.S. 219, 98 L. Ed. 2d 555, 566-67, 108 S. Ct. 538 (1988) (state court judge found not to have absolute immunity under 42 U.S.C. § 1983 [1976] for decision to dismiss subordinate employees).

PEERA specifically excludes from its scope the modification of existing rights of public employers to direct work; to hire, promote, demote, transfer, assign, or retain; to suspend, discharge, or relieve employees; to maintain operating efficiency; to take such actions as may be necessary to carry out the agency's mission; and to determine the methods, means, and personnel by which operations are to be carried out. K.S.A. 75-4326.

The powers granted by PEERA to PERB are limited and do not suggest a coercive influence. The intrusion into the judicial branch personnel process concerns guarantees of fairness rather than dictates of administrative decisions.

The Intervenor contends the executive branch has little understanding of confidentiality and judicial ethics and the difference between the judicial branch and an administrative agency. The Intervenor argues that a result of PEERA coverage for judicial branch employees would be disorder in government operations and functions. The argument is not persuasive.

The legislatively stated objective of PEERA is the promotion of orderly government operations and fundamental fairness to public employees. It does not promote undue concentration of power in any one branch of government or represent a coercive attempt by the legislature to invade the powers of the judiciary.

In conclusion, PEERA does not involve judicial powers. It involves a very limited intrusion into the administrative functions of the judiciary. Judicial self-administration is not materially affected. The legislature has not sought to invade the judicial province of the judicial branch.

No improper violation of the separation of powers doctrine is present here.

Interestingly enough, there is foreign precedential authority on the dual issues presented by the Intervenor. Inexplicably, neither the Intervenor nor KAPE has addressed that authority.

Although involving statutory and constitutional language differing from PEERA and the Kansas Constitution, in each of the following cases, representatives of the judicial branch contended

that the language of the relevant public employee relations statute did not include the judicial branch, and, if the statute did apply, the application constituted an unconstitutional invasion of the unified court system's powers: *County of Kane v. Carlson,* 116 Ill. 2d 186, 507 N.E.2d 482 (1987); *Matter of Staff Employees,* 406 Mich. 647, 281 N.W.2d 299 (1979); *Judges v. Bay County,* 385 Mich. 710, 190 N.W.2d 219 (1971); *State ex rel. O'Leary v. Missouri State Bd. of Mediation,* 509 S.W.2d 84 (Mo. 1974); *McCoy v. Helsby,* 34 App. Div. 2d 252, 311 N.Y.S.2d 60 (1970), *aff'd* 28 N.Y.2d 790, 270 N.E.2d 722 (1971); *Circuit Court v. AFSCME,* 295 Or. 542, 669 P.2d 314 (1983); *Com. Ex Rel. Bradley v. Penn. Labor,* 479 Pa. 440, 388 A.2d 736 (1978); *Zylstra v. Piva,* 85 Wash. 2d 743, 539 P.2d 823 (1975). None of these cases appears to be clearly distinguishable from the case before us. And, with the exception of *Matter of Staff Employees,* 406 Mich. 647, each of these cases holds that the public employee relations statute applies to the judicial branch and there is no impermissible usurpation of the judiciary's powers. That body of case authority is impressive.

As stated before, the district court decision before us for review should be affirmed.

BRISCOE, LARSON, and GERNON, JJ., join in the foregoing dissenting opinion.