No. 80,215

BOARD OF COUNTY COMMISSIONERS OF MARSHALL COUNTY, KANSAS, *Appellee,* v. LINCOLN TOWNSHIP, MARSHALL COUNTY, KANSAS, *Appellant.*

(970 P.2d 54)

Opinion filed December 11, 1998.

*Edward F. Wiegers,* of Galloway, Wiegers & Heeney, LLP, of Marysville, argued the cause and was on the brief for appellant.

*Keith W. Sprouse,* county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: County repaired a township road. Township refused to pay County. County filed suit against Township to recover its costs for the road repair. The district court found County had

statutory authority to repair the road and assess the cost against Township, granted summary judgment to County, and entered judgment against Township for the amount of the repairs. Township appeals, claiming Board of County Commissioners had no statutory authority to repair or order Township to repair the township road.

On October 10, 1994, seven residents of Lincoln Township, who resided along or near a township road that lies between Lincoln Township and Nemaha County, met with the Board of County Commissioners of Marshall County (Marshall County) to express their concern regarding the safety of the township road. Marshall County contacted the county road supervisor, who opined that the road was not safe for the traveling public, particularly for the school bus and the U.S. mail carrier. Marshall County sent written notification to the Lincoln Township Board of Trustees, advising the trustees that if they did not repair the road within 2 weeks, Marshall County would proceed under K.S.A. 68-124 with reasonable repairs to the township road and charge the expenses to Lincoln Township.

On October 17, 1994, the Lincoln Township Board of Trustees met with Marshall County and informed the commissioners that Lincoln Township did not have sufficient funds to make the needed repairs on the road. Lincoln Township believed the road was in satisfactory condition for travel except when it was wet and muddy, and denied Marshall County's demand to repair the road.

On October 24, 1994, Marshall County delivered rock to the township road. Lincoln Township applied the rock to the road. Marshall County billed Lincoln Township $2,030.25 for the cost of the rock, labor, equipment, and material. The amount was due on or before March 10, 1995. Lincoln Township claimed it was without funds and refused to pay the amount due.

Marshall County filed an action in district court to recover the cost of the project. The district court granted summary judgment to Marshall County against Lincoln Township in the amount of $2,030.25. Lincoln Township appeals, claiming Marshall County had no authority under the circumstances to repair or to order the township to repair the township road.

The resolution of the question presented depends on statutory interpretation. Interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The district judge observed that the answer to the issue depends upon the interpretation of K.S.A. 68-124, which provides in part:

"Where under the laws of the state of Kansas . . . any road or highway that is not a county road has been declared to be a public road or highway, it shall be the duty of the board of highway commissioners of the township in which such road is located to repair, place and keep in condition for travel such roads or highway. If such board of highway commissioners shall neglect, refuse or fail to comply with the provisions of this act, the board of county commissioners of the county may repair and put in good condition for travel such road or highway, and shall charge the expenses therefor to the township in which such road is located."

The district judge noted that although the primary responsibility for the maintenance of township roads in counties that do not operate under the county unit system is placed with the township board, as provided by K.S.A. 68-526 and 68-124, there are certain situations where the board of county commissioners has the statutory authority to intervene. The provisions of K.S.A. 68-124 allow the board of county commissioners to intervene when the township board "shall neglect, refuse or fail" to place and keep the roads in good condition. The district judge observed that if the county commissioners determined the road is not in good condition for travel, the commissioners had statutory authority to put the township road in good condition and charge the expenses to the township.

The district judge noted there was a difference of opinion between Marshall County and Lincoln Township as to whether the road was safe for travel or whether repairs were necessary to put the road in good condition. Lincoln Township had concluded, based on the use of the road, history of maintenance of the road, funds available for repairs, and other factors, that the road, except when wet or muddy, was in good condition for travel. Marshall County, after considering the same factors, disagreed with Lincoln Township and concluded that the road was not safe for public travel and required repair to put it in safe condition for travel when wet or muddy.

The district court observed that Marshall County had relied upon Attorney General Opinion No. 87-22 in determining it had the authority to make repairs to the road and to charge the expenses to Lincoln Township. The Attorney General had issued the opinion on February 5, 1987, at the request of the Marshall County Counselor. Before discussing that opinion, the district judge acknowledged that opinions issued by the Attorney General's office, though not binding on the court, are persuasive. See *Moore v. City of Lawrence*, 232 Kan. 353, 362, 654 P.2d 445 (1982); *Greenwood v. Estes, Savings & Loan Commissioner*, 210 Kan. 655, 661, 504 P.2d 206 (1972).

In Opinion No. 87-22, the Attorney General relied upon *Stock Farm Co. v. Pottawatomie County*, 116 Kan. 315, 226 Pac. 781 (1924), and determined that Marshall County had authority under K.S.A. 68-124 to make repairs to a township road and to charge the township for the expenses incurred if the township board failed to make the necessary repairs to keep the road in good condition for travel. In *Stock Farm Co.* this court stated:

"Where the township highway commissioners neglect to place and keep in condition a lawfully established township road, that duty may be lawfully performed by order of the board of county commissioners or the county engineer, and the expenses therefor charged against the township as provided in R.S. 68-124, 68-546." 116 Kan. 315, Syl. ¶ 5.

The district judge then noted that K.S.A. 68-124 contains no statement as to what repairs may be made or how the term "good condition for travel" is to be construed or applied. The district judge pointed out that the statute vests the board of county commissioners with the authority to determine whether the township board of highway commissioners has neglected, refused, or failed to repair and place the road in good condition. The district judge concluded that the repairs needed for the road to be in good condition for travel are left to the sound judgment and discretion of the board of county commissioners.

The district judge further noted that in *Pratt v. Fall River Township Board*, 155 Kan. 442, 445, 125 P.2d 357 (1942), the Kansas Supreme Court, in a mandamus action relating to the repair and maintenance of a township road, stated: "Where a public official

or board is vested with discretion courts will not interfere to control that discretion in the absence of fraud, bad faith or gross impropriety on the part of the official. [Citations omitted.]"

The judge then noted that Marshall County, after consideration of the use of the road as a farm-to-market road, mail route, and school bus route, had concluded the road was not always in good condition for travel and needed to be repaired. Marshall County had attempted to obtain the cooperation of Lincoln Township in making the necessary repairs. After Lincoln Township refused to make the necessary repairs, Marshall County, following K.S.A. 68-124, exercised its discretion and made the necessary repairs.

As it did in the district court, Lincoln Township argues on appeal that it did not fail to act; it specifically considered the condition of the road and elected not to repair a road that was safe for public travel except when it was wet or muddy. Lincoln Township asserts that Marshall County made a political decision to repair the road, rather than a decision based on safety considerations. By acting in such a manner, Lincoln Township contends Marshall County unlawfully usurped Lincoln Township's authority and repaired a road the township had determined to be in good condition for travel under normal weather conditions. Lincoln Township also alleges that the district court considered controverted facts regarding the condition of the road and improperly ruled on the motion for summary judgment.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence,

summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

After reviewing the record, we find that it is unnecessary to sort through the controverted and uncontroverted facts raised by Lincoln Township to resolve the question of whether the evidence indisputably established that the township road was not always in good condition for travel. The answer is found in affidavits submitted by Lincoln Township to the district court.

Lincoln Township attached three affidavits to its memorandum in opposition to Marshall County's motion for summary judgment: an affidavit by Loren Kent Stowell, treasurer of Lincoln Township; an affidavit by August Barnes, Lincoln Township grader operator; and an affidavit by Donald Van Dorn, trustee of Lincoln Township. All three affidavits stated: "When the road was wet it could be classed as a dirt road and would not be passable for ordinary traffic or school buses." The affidavits by Loren Kent Stowell and Donald Van Dorn stated that the road "was not dangerous and was passable to ordinary traffic at all times *except when it was muddy.*" (Emphasis added.)

Lincoln Township's affidavits admit that the township road was not in good condition for travel when the weather was wet and the road was muddy. Each affidavit explained that alternate passable roads were utilized by the school bus and the mail carrier during wet weather, *i.e.*, alternate routes were necessary because the township road was not in condition for travel during those times. The Lincoln Township affidavits clearly establish that the township road was not always in good condition for travel. In addition, the county road supervisor determined the road was not safe for the traveling public.

When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Under K.S.A. 68-124, the duty of a township is to keep its roads in "good condition for travel." Where the township neglects, refuses, or fails to comply with the statute's mandate, the board of county commissioners of the county in which the township is located may

exercise its discretion, conduct road repairs, and charge the township for the cost of the project. K.S.A. 68-124.

K.S.A. 68-124 is unambiguous. Lincoln Township had a duty to maintain its roads in good condition for travel, and Marshall County had discretion to order necessary repairs when Lincoln Township failed to do so. Marshall County determined that Lincoln Township had failed in its duty to keep the road in good condition for travel when the weather was wet or the road was muddy. Marshall County, as authorized by statute, exercised its discretion and made the determination that under the circumstances the road should be in good condition for travel in wet weather. Consequently, it made necessary repairs to the road and charged the expenses to the township.

Marshall County did not act fraudulently, in bad faith, or with gross impropriety; it clearly acted within the bounds of its discretion in ordering the repair of the road. The district court did not err in granting summary judgment in favor of Marshall County.

## Cash Basis Law

The affidavit of Donald Van Dorn, trustee of Lincoln Township, states that there were not sufficient funds in the township budget to pay for the road repair. Lincoln Township argues that Marshall County cannot create a debt or obligation for Lincoln Township which Lincoln Township could not lawfully create. Lincoln Township asserts that Marshall County's expenditure for the township's road repair was unlawful because the township was prohibited by the Kansas Cash Basis Law, K.S.A. 10-1101 *et seq.*, from expending funds or creating an indebtedness in excess of the amount of funds actually on hand or in excess of the amount it had budgeted.

The district judge observed that in Lincoln Township's response and opposition to Marshall County's motion for summary judgment, Lincoln Township asserted a defense that it did not have sufficient funds to pay for the cost of the repairs for the improvements to the road. That statement was originally made by Loren Stowell, Lincoln Township Treasurer to the board of county commissioners at its October 17, 1994, meeting. The judge found that

the cost for the repairs was a major reason for Lincoln Township's refusal to make the repairs.

The judge observed that Lincoln Township is subject to the provisions of the Kansas Cash Basis Law. It then noted that the provisions of K.S.A. 68-124 do not provide that a township's lack of adequate funds to repair a road creates a bar to the authority of the board of county commissioners to proceed with the repairs. The district court observed that lack of funds may, at least temporarily, prevent payment to the county for the repairs to a township road.

The judge noted that there are provisions under the cash basis law by which an indebtedness in excess of funds on hand may be incurred, such as the issuance of bonds, temporary notes, or no fund warrants, as permitted by K.S.A. 10-1116. The judge concluded the fact Lincoln Township did not have adequate cash funds available to make repairs to the road did not justify or excuse it from making arrangements for the repair of the road or attempting to work out some arrangement with Marshall County for payment of the expenses incurred for the repairs.

Whether the cash basis law constitutes a defense against Marshall County's claim requires this court to review the applicable statutes. There are exceptions to the cash basis law. K.S.A. 79-2938 allows expenditures for expenses in excess of a governing body's budget through the use of no-fund warrants. No-fund warrants may be issued where, "because of unforeseen circumstances the revenues of the current budget year for any fund are insufficient to finance the adopted budget of expenditures for such fund for the current budget year." K.S.A. 79-2938. The budget must already include the expenditures before issuance of no-fund warrants may be approved. If the township must spend more than the amount originally budgeted through the use of no-fund warrants, the township must amend its budget pursuant to K.S.A. 79-2929a.

No-fund warrants will not be authorized by the State Board of Tax Appeals except upon a finding of extreme emergency need. K.S.A. 79-5031. "The term 'extreme emergency need' shall include, but not be limited to, amounts required to comply with state or federal requirements in such areas as . . . public health and

safety." K.S.A. 79-5030. Clearly, the repair of roads which are not safe for travel is a duty imposed by the State on townships for the purpose of public safety.

Lincoln Township may not use the cash basis law to opt out of complying with statutorily imposed duties. Lincoln Township has not demonstrated to this court that incurring the financial obligation associated with repairing the township road pursuant to K.S.A. 68-124 is unlawful.

Affirmed.

ABBOTT, J., dissenting: The trial court granted summary judgment in this case. I believe that to be error. I am also troubled by the fact it appears to me we have imposed a duty concerning unimproved roads in Kansas where no duty previously existed. This may have far-reaching effects, not only on townships but on counties, to improve the many miles of unimproved roads in Kansas, as well as potential tort liability.

First, I believe summary judgment was premature. A real question exists as to whether the Board of County Commissioners of Marshall County (Marshall County) repaired and put the road in good condition for travel. When the record is examined, as we must view it, in the light most favorable to Lincoln Township, Marshall County "dumped" 257 tons of rock on a 1 ½-mile stretch of road. Marshall County does not appear to have spread the rock. Thus, a question remains as to whether Marshall County improved the road for travel.

My main concern is that there has been no duty in Kansas to make unimproved roads passable during a wet period. Lincoln Township has 18 miles of gravel road and 22 miles of unimproved dirt roads. Statewide, there are over 5,000 miles of unimproved dirt roads. I would not hazard a guess as to how many low-water crossings exist in Kansas. Since statehood, persons using low-water crossings and unimproved dirt roads have been inconvenienced by having to take the "long way" home when the creek rose or the road was muddy. Now we say one political group can make improvements, but order another political group to pay the cost of

such improvements if the road becomes unusable when it is muddy.

I recognize that Marshall County relied on the fact that the road was used as a farm-to-market road and was used by school busses and by a rural mail carrier. K.S.A. 68-1701 provides that the board of county commissioners may designate roads used for such purposes and receive federal funds for their improvements. Obviously, Marshall County did not consider this road of sufficient importance as a farm-to-market road, school bus route, and rural mail carrier route to include it under K.S.A. 68-1701, but it relies on those three factors to impose a cost on the Township.

Interestingly enough, this court has held that "[w]hile a county is required to improve a county road, it is not required to surface it with gravel." *Neosho County Comm'rs v. Burdick*, 120 Kan. 698, Syl. ¶ 1, 244 Pac. 866 (1926). The amount of maintenance on a road has always been discretionary with the county commissioners and should be with the township board. Marshall County has the ability to take over the maintenance of all roads in the county or, under K.S.A. 68-1701, it could take over this specific 1 ½ miles of roadway if it deems it important enough a farm-to-market road, school bus route, or rural mail carrier route.

When the legislature adopted K.S.A. 68-124, I do not believe that it ever intended to allow a board of county commissioners to cause an unimproved dirt road to be graveled at a township's expense solely because the road succumbs to nature and becomes muddy when it rains.

I am concerned that we may be imposing tort liability on counties and townships for failure to gravel unimproved dirt roads. This is because by allowing an exception to the cash basis law, we are saying muddy roads are unsafe. The cash basis law allows an exception for unsafe emergency situations. Muddy roads are not necessarily dangerous roads. They may be irritating and inconvenient, but they do not create an unsafe emergency situation.

I would emphasize that we are dealing with what appears to be a normal, ordinary, dirt road which gets muddy when it rains. The granting of summary judgment in this case is declaring that as a matter of law, the county commissioners in any county that have a

township road system can gravel any township road and force the township to pay for it solely because it gets muddy when it rains.

I would reverse the trial court.

MCFARLAND, C.J., and DAVIS, J., join in the foregoing dissent.