The Honorable Kenny A. Wilk State Representative, 42nd District State Capitol, Room 180-W Topeka, Kansas 66612-1504
Dear Representative Wilk:
You request our opinion regarding a number of issues related to the payment by a unified school district of a bill submitted by a utility company for services that were provided over several years. The questions you set forth raise the following issues:
 1. Whether the Cash Basis Law or Budget Law prohibits the Board of Education for Unified School District No. 449 (U.S.D. No. 449) from authorizing payment of amounts owed Kansas Power and Light (KPL) for electric services that were provided in previous fiscal years;
 2. Whether State law prohibits a unified school district from charging a debt against its current budget for debts incurred in previous fiscal years; and
 3. Whether KPL is required to follow the procedure set forth in subsection (d) of K.S.A. 2000 Supp. 12-105b
when seeking payment for electric services provided in previous years.
In August, 2000, U.S.D. No. 449 was pursuing a construction project at one of its elementary schools. The construction project required the relocation of a KPL light pole. At that time, KPL discovered it had applied an incorrect billing constant for electric services provided at the site to U.S.D. No. 449, resulting in an undercharge for those services provided since November, 1989. "General Terms and Conditions for Electric Service" issued by the Kansas Corporation Commission allows a utility to compute and correct billing errors back to the time the errors actually occurred and to seek payment for the full amount of any undercharge. In September, 2000, KPL offered to resolve the billing issue by seeking payment of corrected charges dating back to September, 1997, for a total of $10,498.78. U.S.D. No. 449 has already closed out the budgets for fiscal years 1998, 1999, and 2000. At the time the budget for the current fiscal year was adopted by U.S.D. No. 449, there was no allocation of funds made for the payment of the undercharges.
 CASH BASIS AND BUDGET LAWS
A unified school district is a "municipality"[1] subject to the Cash Basis Law[2] and Budget Law.[3]
"[T]he purpose of the cash-basis and budget laws is to prevent a deficit in the funds of a municipality at the end of the fiscal year. To effectuate that purpose, the budget is to be carefully made and the estimate of expenditures therein specified is to be faithfully observed. K.S.A. 10-1102 declares that the purpose of the cash-basis law is to provide for the funding and payment of all legal debts and obligations and for the future conduct of the financial affairs of such municipality upon a cash basis.
"The budget law, K.S.A. 79-2935, makes it unlawful for the governing body of any taxing subdivision or municipality in any budget year to create an indebtedness in any manner or in any fund after the total indebtedness created against such fund shall equal the total amount of the adopted budget of expenditures for such fund for that budget year. Any indebtedness incurred by the governing body or any officer or officers of such taxing subdivision or municipality in excess of said amount shall be void as against such taxing subdivision or municipality."[4]
Under the Cash Basis Law, "it is unlawful for any member of a governing body of a municipality to knowingly vote for any action creating an indebtedness in excess of the amount of funds actually on hand in the treasury."[5] Likewise, the Budget Law provides that "[i]t shall be unlawful for the governing body of any taxing subdivision or municipality in any budget year to create an indebtedness in any manner or in any fund after the total indebtedness created against such fund shall equal the total amount of the adopted budget of expenditures for such fund for that budget year."[6]
According to the information provided with the request, "any payments authorized by the [Board of Education for U.S.D. No. 449] to be made toward past billing errors would put the board over its prior years' and current year's budgets and require the use of funds in excess of the amount of funds budgeted and available in the various fiscal years."[7]
Under these circumstances, a vote to approve payment of the claim submitted by KPL would result in authorizing the creation of an indebtedness in excess of funds actually on hand in the treasury of U.S.D. No. 449. This may be a violation of the Cash Basis Law and the Budget Law if the Board of Education takes no further action to obtain additional funds for its treasury.
"While K.S.A. 10-1113 does generally prohibit municipalities from creating indebtedness in excess of funds actually on hand, this proscription is prefaced with the phrase '(u)nless otherwise provided by this act.' Therefore, the Cash Basis Law clearly allows the creation of indebtedness in excess of funds on hand when specifically authorized by the Cash Basis Law."[8]
"The limits of indebtedness prescribed under the provisions of article 11 of chapter 10 of Kansas Statutes Annotated may be exceeded when: (1) Payment has been authorized by a vote of the electors of the municipality; (2) provision has been made for payment by the issuance of bonds or temporary notes as provided by law; (3) provision has been made for payment by the issuance of no-fund warrants authorized by law and in the manner, and limited in amount as prescribed by law; (4) provision has been made for a revolving fund for the operation of any municipal airport financed and sustained partially or wholly by fees, rentals, proceeds from the sale of merchandise or charges for rendering services, received from the users of such airport; or (5) provision has been made for payment pursuant to a service agreement entered into pursuant to K.S.A.12-5503."[9]
In addition, "K.S.A. 79-2938 allows expenditures for expenses in excess of a governing body's budget through the use of no-fund warrants. No-fund warrants may be issued where, `because of unforeseen circumstances the revenues of the current budget year for any fund are insufficient to finance the adopted budget of expenditures for such fund for the current budget year.'"[10] Upon receipt of authorization from the Board of Tax Appeals, the governing body of a municipality may issue no-fund warrants when, due to unforeseen circumstances, it is apparent the revenues of the current budget for any fund are insufficient to finance the adopted budget[11] or a fund within the budget does not contain sufficient funds to pay the expense of the unforeseen occurrence along with the imperative functions of the budget.[12]
Based on the information provided, it would appear the claim submitted by KPL to U.S.D. No. 449 is an unforeseen circumstance for which the District may seek authorization for issuing no-fund warrants. If the Board of Tax Appeals authorizes issuance of the warrants and such warrants are issued by the District in an amount sufficient to meet the needs of the budget, there will be no violation of the Cash Basis and Budget Laws.
As previously noted, the purpose of the Cash Basis and Budget Laws is to make a governmental entity function within an adopted budget, ensuring that the entity does not acquire debt beyond its capabilities. The budget is an estimate of the costs the entity will incur within a specific fiscal year. Therefore, it is sensible that costs of services provided in one fiscal year should be paid from funds in the budget of that same fiscal year. However, such is not a requirement of law. Obligations incurred in one fiscal year may be paid in a succeeding fiscal year.[13] State law does not prohibit U.S.D. No. 449 from paying out of its current budget a claim submitted by KPL for services provided in previous fiscal years.
 FILING CLAIMS
State statutes establish the manner in which claims are to be filed with a municipality and warrants or warrant checks drawn upon its treasury.[14] Before a warrant or warrant check may be issued or authorized by a unified school district,[15] the claim therefor must be presented pursuant to K.S.A. 2000 Supp. 12-105b, unless the claim is for the payment of bonds and interest, temporary notes, scrip, or no-fund warrants issued by the municipality.[16]
"K.S.A. 12-105b provides a mandatory uniform procedure for presenting claims against municipalities. Subsection (a) applies to all claims a person may have against [a school district]:
 "`All claims against a [school district] must be presented in writing with a full account of the items, and no claim shall be allowed except in accordance with the provisions of this section. A claim may be the usual statement of account of the vendor or party rendering a service or other written statement showing the required information.'
"Subsection (d) applies only to claims giving rise to actions under the Kansas Tort Claims Act:
 "`Any person having a claim against a [school district] which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the [school district] and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.'
"The plain language of K.S.A. 12-105b requires that persons with tort claims are required to give notice before filing suit; however, those with contract claims are not required to give notice before filing suit. . . .
"[S]ubsection (a) of K.S.A. 12-105b requires presentation of all claims via a written statement, while subsection (d) requires a written notice of tort claims. Second, K.S.A. 12-105b(a) requires only that all claims be presented in writing. It does not require a claimant to present the statement before an action may be filed, as does subsection (d)."[17]
"The legislative intent of K.S.A. [2000 Supp.] 12-105b is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim."[18] Subsection (a) requires presentation of all claims while subsection (d) requires that claims that may give rise to an action brought under the Kansas Tort Claims Act[19] be submitted to the municipality prior to filing a lawsuit against the municipality. None of the provisions of the statute requires that a claim be submitted within a certain time period after which the claimant provided a service or product. It appears the remaining provisions are not applicable to the situation presented.
It is our understanding that during the budget years of 1997 through 2000, claims of what were believed by both U.S.D. No. 449 and KPL to be full and complete were submitted by KPL pursuant to K.S.A. 10-802 and K.S.A. 2000 Supp. 12-105b and paid by the school district. Upon discovering an error in a billing constant, KPL sought payment of the computed undercharge. If KPL sought payment for the undercharges from previous fiscal years by submitting to U.S.D. No. 449 a written statement with a full account of the items for which payment was sought, KPL has complied with its obligations under K.S.A. 10-802 and K.S.A. 2000 Supp.12-105b(a). If the claim submitted by KPL includes all the information required under subsection (d) of the statute, it has likewise complied with that provision. We have been presented with no information indicating whether KPL is contemplating filing a suit pursuant to the Tort Claims Act. If it does file such an action, it must file a claim in accordance with subsection (d) of K.S.A. 2000 Supp. 12-105b at least 120 days prior to filing the lawsuit. Whether the claim is no longer valid due to the passing of any applicable statute of limitations is subject to interpretation of statutes other than K.S.A. 10-802 and K.S.A. 2000 Supp. 12-105b.
In review, members of the Board of Education for U.S.D. No. 449 may violate the Cash Basis and Budget Laws if by authorizing payment of the claim submitted by KPL for services rendered in previous fiscal years an indebtedness in excess of funds actually on hand in the treasury of U.S.D. No. 449 is created. If, however, the Board of Tax Appeals authorizes issuance of no-fund warrants by U.S.D. No. 449 and such warrants are issued in an amount sufficient to meet the needs of the budget, there will be no violation of the Cash Basis and Budget Laws. Provided sufficient funds are available in the budget of U.S.D. No. 449, State law does not prohibit the District from paying out of its current budget a claim submitted by KPL for services provided in previous fiscal years. If KPL is seeking payment for undercharges from previous fiscal years by submitting to U.S.D. No. 449 a written statement with a full account of the items for which payment is sought, KPL has complied with its obligations under K.S.A. 10-802 and K.S.A. 2000 Supp. 12-105b(a). If the claim submitted by KPL includes all the information required under subsection (d) of the statute, it has likewise complied with that provision.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] K.S.A. 2000 Supp. 10-1101; K.S.A. 72-8204a.
[2] K.S.A. 10-1101 et seq.
[3] K.S.A. 79-2925 et seq.
[4] Greenlee v. Board of County Comm'rs for Clay County, 241 Kan. 802,807 (1987). See also State ex rel. Tomasic v. Unified Government ofWyandotte County, 265 Kan. 779, 803 (1998), citing K.S.A. 10-1113.
[5] Attorney General Opinion No. 98-13, citing K.S.A. 10-1113.
[6] K.S.A. 79-2935.
[7] Correspondence, Kenny A. Wilk, October 23, 2000.
[8] State ex rel. Tomasic, 265 Kan. at 804.
[9] K.S.A. 10-1116(a).
[10] Board of County Comm'rs of Marshall County v. Lincoln Tp. Board ofTrustees, 266 Kan. 355, 362 (1998), citing K.S.A. 79-2938.
[11] K.S.A. 79-2938.
[12] K.S.A. 79-2939.
[13] See Legislative Coordinating Council v. Stanley, 264 Kan. 690,714-15 (1998).
[14] See K.S.A. 10-801 et seq.
[15] See K.S.A. 10-101 ("municipality" includes "every corporation and quasi corporation empowered to issue bonds in payment of which taxes may be levied).
[16] K.S.A. 10-802.
[17] Wiggins v. Housing Authority of Kansas City, Kansas,19 Kan. App. 2d 610, 611-12 (1994), citing Quigleyv. General Motors Corp., 647 F. Supp. 656,660 (D.Kan. 1986). See also Johnson v. Board of County Comm'rs ofPratt County, 259 Kan. 305, 326 (1996).
[18] Smith v. Kennedy, 26 Kan. App. 2d 351, 361 (1999).
[19] K.S.A. 75-6101 et seq.