No. 88,821

PETITION OF CARLA J. STOVALL, ATTORNEY GENERAL, TO
DETERMINE THE VALIDITY OF 2002 SUBSTITUTE FOR SENATE
BILL 256

(44 P.3d 1266)

Opinion filed May 9, 2002.

The opinion of the court was delivered by

ABBOTT, J.: This action is brought by the Attorney General of
the State of Kansas pursuant to article 10, § 1 of the Kansas Con-
stitution, which provides for reapportionment of senatorial and
representative districts. This court recently upheld the validity of
2002 Substitute for House Bill 2625, which reapportioned the
House of Representatives, in case No. 88,735 filed April 26, 2002.

2002 Substitute for Senate Bill 256 passed the Kansas Senate on
April 2, 2002, by a 29 to 11 margin. The exact plan was subse-
quently passed unchanged by the Kansas House of Representatives

on April 4, 2002, by a 106 to 15 margin. Governor Bill Graves signed the bill on April 8, 2002. On April 25, 2002, the attorney general filed a petition with the clerk of the court to determine the validity of 2002 Substitute for S.B. 256.

When the attorney general filed her pleadings in this court to determine the validity of the bill, the court immediately entered an order scheduling a hearing on the petition for Tuesday, May 7, 2002, in the Kansas Supreme Courtroom, Kansas Judicial Center, 301 S.W. 10th Avenue, Topeka, Kansas, commencing at 1:30 p.m. To provide wide public notice of the hearing, the court directed the clerk of the court to publish a copy of the scheduling order one time in each of 13 newspapers of wide circulation: The Topeka Capital-Journal, The Kansas City Kansan, The Kansas City Star, The Wichita Eagle, The Emporia Gazette, The Salina Journal, The Hutchinson News, The Pittsburg Morning Sun, The Garden City Telegram, The Junction City Daily Union, The Manhattan Mercury, The Lawrence Journal-World, and The Arkansas City Traveler. A copy of the scheduling order also appeared in the Kansas Register and was posted on the Supreme Court's website at www.kscourts.org. Interested persons were invited to file written statements in support of or in opposition to the proposed reapportionment before noon on Monday, May 6, 2002, and those submitting written statements were invited to make oral presentations. Interested persons submitting written statements were not required to present their views orally to the court. A written statement in favor of the redistricting plan was submitted by Senator Anthony Hensley of the 19th District and Senator Stan Clark of the 40th District.

Carla J. Stovall, attorney general, appeared in person. William Scott Hesse, assistant attorney general, appeared in person and argued the case. They recommended to the court that it approve the reapportionment legislation.

The attorney general's office provided maps of the senatorial districts for the entire state and individual maps of the senatorial districts for numerous counties and cities. The maps were admitted by the court and made a part of the record.

Upon consideration of the matter, the court examined the written statements filed, the petition filed by the attorney general, along with its exhibits, and the brief filed by the attorney general. The court also examined the maps of the senatorial districts provided by the attorney general's office and took judicial notice of other relevant official records.

Despite the lack of objection, the court is required by article 10, § 1(b) of the Kansas Constitution to examine the legislation and determine the validity of the reapportionment legislation. " 'In determining whether a reapportionment act is valid, a court must examine both the procedure by which the act became law and the substance of the apportionment act to determine that it satisfies constitutional requirements.' " *In re House Bill No. 3083*, 251 Kan. 597, 601, 836 P.2d 574 (1992) (quoting *In re Substitute for House Bill No. 2492*, 245 Kan. 118, Syl. ¶ 1, 775 P.2d 663 [1989]).

In the case of *In re 2002 Substitute for House Bill 2625* filed on April 26, 2002, this court set forth the general rules of law for reexamining reapportionment legislation which this court uses as guidelines. Those rules will not be set forth in this opinion, but are adopted by reference, and the reporter of decisions is directed to put the official cite in this opinion when it becomes available.

The procedure by which the reapportionment legislation was enacted has not been challenged. In the absence of evidence of a violation of constitutional or statutory law, or any evidence that the applicable legislative rules were not followed, we do not find any procedural inadequacies.

Next, our review of 2002 Substitute for S.B. 256 takes up the substantive validity of the legislation on senatorial districts. The fact that other redistricting maps might have been drawn with lower deviations is irrelevant to our inquiry, which is limited to the constitutional validity of this legislation. See *In re House Bill No. 3083*, 251 Kan. at 605.

The bill divides the state into 40 districts. The ideal senatorial district would consist of 66,806 persons. The ideal figure can be obtained by dividing the state adjusted population figure of 2,672,257 by 40. The largest district is District 31 located in Harvey and Sedgwick Counties with a population of 69,839 (or +4.54%),

while the smallest district is District 37 located in Johnson County, a traditionally high growth area, with a population of 63,648 (or -4.73%). Applying the 2000 census figures as adjusted to the current districts reveals an overall deviation of 9.27%, a range that is constitutional. The deviation of 9.27% is less than the 10% standard discussed in our prior House reapportionment opinion, and it is presumed valid for Fourteenth and Fifteenth Amendment purposes.

Only one new district that is not represented by a current member of the Kansas Senate was added in 2002 Substitute for S.B. 256. This district is District 37 in Johnson County.

Conversely, only two current members of the Senate are in the same district. The 36th Senate District potentially pits Democrat Janis Lee and Republican Larry Salmans against each other in the 2004 Senate general election.

The United States Supreme Court has stated: "Redistricting may pit incumbents against one another or make very difficult the election of the most experienced legislator. The reality is that districting inevitably has and is intended to have substantial political consequences." *Gaffney v. Cummings*, 412 U.S. 735, 753, 37 L. Ed. 2d 298, 93 S. Ct. 2321 (1973).

Districts meriting special attention appear in Wyandotte and Sedgwick Counties. District 4 in Wyandotte County has been retained. In 1992, District 4 was a majority African-American district. Senate District 4 currently is represented by an African-American. In the proposal for reapportionment before the court, Senate District 4 has a 49% African-American population. Clearly, this African-American district retains a sufficient African-American population to influence an election.

District 29 in Sedgwick County is represented by an African-American and has been retained. In 1992, District 29 had a significant African-American voting bloc. The African-American voting bloc was not diminished by redistricting and retains a 33.1% African-American percentage. The Hispanic population in Wichita is fairly well distributed through the city and does not represent any appreciable percentage of the population of any senatorial district. An example of the distribution of Hispanic voters throughout

Wichita is expressed by the fact a Hispanic male represents House District 28. Thus, Sedgwick County has one majority African-American district that is currently represented by an African-American. In addition, there is a majority district which is represented by a Hispanic person.

We must conclude that none of the Kansas senatorial districts created in 2002 Substitute for S.B. 256 appear to violate the provisions of the Voting Rights Act, 42 U.S.C. § 1973 (1994). No challenge has been registered, and minority representatives of these districts were consulted and participated in the drawing of lines for these districts.

We also conclude that the Kansas senatorial districts created in 2002 Substitute for S.B. 256 do not violate the one person-one vote principle. Minority representatives of these districts were consulted and participated in drawing the lines for these districts, and no challenge has been raised in connection with the one person-one vote principle.

Our review of the substantive validity of the reapportionment legislation includes a determination of whether the districts are compact and contiguous as drawn. "[L]ack of contiguity or compactness raises immediate questions as to political gerrymandering and possible invidious discrimination which should be satisfactorily explained by some rational state policy or justification." *In re House Bill No. 2620*, 225 Kan. 827, 834, 595 P.2d 334 (1979). However, "[t]he mere fact that a political entity, such as a county, is split does not vitiate the act." *In re House Bill No. 3083*, 251 Kan. at 607-08.

After examining the maps of the districts provided, we conclude that no violations exist that would require a satisfactory explanation.

2002 Substitute for S.B. 256 draws new boundaries for the 40 Senate seats. The bill passed the legislature with fairly strong bipartisan support, and it has been signed by the Governor. Legislation is presumed to be constitutional.

Under the circumstances disclosed herein, we conclude the reapportionment plan for the Senate does not violate the one person-one vote principle guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Judgment is entered upholding the validity of 2002 Substitute for S.B. 256.